Hon. LEMUEL SHAW, CHIEF JUSTICE.
Hon. SAMUEL S. WILDE,
Hon. CHARLES A. DEWEY,
Hon. THERON METCALF,
Hon. RICHARD FLETCHER,
} JUSTICES.

---

### LUCY J. WALKER vs. THE BOSTON & MAINE RAILROAD.*

Objections to the proceedings before a sheriff's jury, empanelled to assess damages for land taken for a highway or railroad, — that the respondent had no notice of the application to the commissioners for a jury, — or that three disinterested commissioners were not present, as required by the Rev. Sts. c. 14, § 27, — or that there were other cases of the same kind, which ought to have gone to the same jury, — cannot be taken advantage of on appeal, unless the grounds of such objections appear on the record; and it is not enough, that it does not appear, by

---

* In the corporate name of this company, as established by the act of 1843-
c. 90, the word "Company" or "Corporation" is not used. In the act of 1846, c. 75, it is called the "Boston and Maine Railroad Corporation;" in the act of 1847, c. 70, it is called the "Boston and Maine Railroad Company;" and in that of 1848, c. 322, it is again called the "Boston and Maine Railroad Corporation." The true name is the "Boston and Maine Railroad."

VOL. III.                    1

Walker *v.* The Boston & Maine Railroad.

the record, that the party had notice, — or that the business was determined by disinterested commissioners, or by consent, — or that there were other like cases which were put to the same jury

If some of the jurors, summoned on a sheriff's jury, to assess damages for land taken for a railroad, are drawn from the town in which the land lies, this is an objection to those jurors only, and not to the others, and must be taken at the time the jury is empanelled; in which case, the sheriff may set aside the jurors so disqualified, and fill their places with others; but if the respondent proceed to trial, without taking the exception, it will be considered as waived, and cannot afterwards be taken on appeal to this court. (See *Davidson* v. *Boston & Maine Railroad*, page 91.)

Where flats appurtenant or incident to upland are taken for a railroad, the commonwealth has no interest therein by way of easement, which requires the damages for taking the same to be assessed in the manner provided by the Rev. Sts. *c*. 24, §§ 48, 49, 50, where there are several parties having several estates or interests, at the same time, in the land taken.

If a party, aggrieved by the adjudication of the court of common pleas, upon the acceptance or rejection of the verdict of a sheriff's jury, desire to bring his case before this court, upon questions of law, which do not appear in the warrant, the verdict, the sheriff's return, (including his instructions and directions to the jury,) or in the judgment of the court, this can only be done by a bill of exceptions; unless the court specify in their adjudication, as they may do, the grounds on which they accept or set aside the verdict; in which case, as well as in the former, the ground of the judgment becomes apparent on the record.

The provision of the Rev. Sts. *c*. 39, § 57, that a party dissatisfied with the estimate of damages made by county commissioners, for land taken for a railroad, may apply to the commissioners for a jury to assess the damages, either at the same meeting, at which the estimate is completed and returned, or at the next regular meeting thereafter, limits the time within which the application must be made, but not the time within which it must be acted upon.

The warrant issued by county commissioners, on the application of an owner of land, for a jury to assess damages for land taken for a railroad, need not be in any particular form; but it should set forth, with sufficient certainty, the subject matter into which the jury are to inquire, to wit, the land over which the railroad passes, — the petitioner's title to or interest in it, — the location of the road, — and the incidental damages, if any, which the petitioner has sustained, in addition to the value of the land taken; and this may be done either by reciting the substance of the petition in the warrant, or by annexing a copy of the petition thereto, and referring to the same in the warrant.

In adjudicating upon the verdict of a sheriff's jury, the power of the court of common pleas is not defined, but they are authorized to set the verdict aside for good cause; which may be either some irregularity or error apparent in the proceedings, as in the empanelling of the jury, or other conduct of the sheriff, or in his instructions and directions to the jury; or some fact affecting the purity, honesty, or impartiality of the verdict, such as tampering with jurors, or other misconduct of a party, or any irregularity or misconduct of the jurors, which fact may be brought to the knowledge of the court by evidence *aliunde;* but whether the court of common pleas can set aside such a verdict, on the ground, that the warrant issued improvidently, or without legal authority, or that the verdict is without or against evidence, or against the weight of evidence, has not been decided, and the court give no opinion.

If the court of common pleas are called upon to set aside the verdict of a sheriff's jury, on the ground, that the respondent had not due notice of the application to the commissioners for the jury, the objection cannot be substantiated by showing,

that such notice does not appear by the warrant, the return, or the record of the commissioners; for it may notwithstanding be proved by evidence *aliunde*, that the respondent was summoned, or consented to take notice without summons, or, in fact, appeared before the commissioners.

The decisions of the court of common pleas, upon questions of fact arising on the acceptance or rejection of the verdict of a sheriff's jury, are final, and cannot be reëxamined in this court on appeal; but the decisions of that court, upon questions of law arising on facts admitted or proved, may be revised in this court on appeal, provided the ground of the decision appear on the record, either as a part of the formal proceedings, or by a bill of exceptions, or otherwise.

The power of the court of common pleas, in adjudicating upon the acceptance or rejection of the verdict of a sheriff's jury, is much more extensive than the power of this court, on an appeal from their adjudication; that court may set aside the verdict for any good cause; this court can only examine their judgment, to see if there is any error therein apparent on the record.

An appeal to this court, from a judgment of the court of common pleas, accepting or rejecting the verdict of a sheriff's jury, for the assessment of damages for land taken for a railroad, is a summary proceeding, provided. as a substitute for a writ of error in ordinary cases; and, upon such appeal, the adjudication of the court of common pleas is to be construed with the same liberality, as to defects of form and amendments, as is applicable to writs of error and proceedings on *certiorari*, and the case is to be considered in the same manner, as if formally brought before the court by a writ of *certiorari.*

When an application is made to the county commissioners, for an assessment by a jury of damages for land taken for a railroad, the party, against whom the application is made, is entitled to notice thereof from the county commissioners; but, in order that the objection of a want of notice may be taken advantage of on an appeal, it must appear on the record, that the party had not due notice of the pendency of the petition, before the warrant issued; and it is not sufficient, that no averment appears on the record, that notice was given; there being no occasion, in the proceedings before the commissioners, that the giving of the notice should so appear.

Where a cove, inlet, or estuary, is so irregular and various in outline, and so traversed by crooked and meandering creeks and channels, from which the sea does not ebb, that, in dividing the flats therein among the conterminous proprietors, it is impossible to apply any of the rules, which have been applied in other cases; the most that can be done is, to take the colony ordinance of 1641, and apply it according to its true spirit, and, by as near an approximation as practicable to the rules which have been judicially established, to lay down such a line of division, as to give to each riparian proprietor his fair and equal share.

A natural channel or creek, in which the sea ebbs and flows, and from which the tide does not ebb, is a boundary to a claim of flats in that direction.

On the estuary of a river, or arm of the sea, through which there is a channel, the lines of flats will ordinarily run towards such channel, and in the most direct course.

The purpose of the colony ordinance of 1641 was not so much to promote the erection of wharves, and to facilitate navigation, as to declare the right of private owners in the soil of the flats, between high and low water.

[The application of the rules, regulating the division of flats among conterminous proprietors, made in this case, can only be understood by a reference to the map.]

On the 16th of March, 1844, the legislature of this commonwealth established a corporation (*St.* 1844, *c.* 172,) by

the name of the Boston and Maine Railroad Extension Company, for the purpose of constructing a railroad beginning at a convenient point in the Boston and Maine Railroad, near its junction with the Boston and Lowell Railroad, and terminating in the public square at the easterly end of Haverhill and Canal Streets in Boston. The route prescribed in the act of incorporation, from the point where it was directed to cross the Mystic River, by a bridge near Malden bridge, is thus described : " thence passing near the Mill Pond, at the outlet of the Middlesex Canal, at least one fourth of a mile from the M'Lean Asylum, by the way of Somerville or Charlestown, to a point on the Charlestown Branch Railroad, near their engine house in Charlestown : *provided* it shall not cross the Charlestown Branch Railroad, at any point east of the State Prison, without the assent of the directors of the *Charlestown Branch Railroad Corporation ;* thence crossing Charles River by a bridge, above Warren bridge, to the city of Boston, between Haverhill Street and Canal Street ; and thence between said streets, to the public square, at the easterly end of said streets." The corporation thus established was invested with all the powers and privileges, and subjected to all the duties, liabilities, and restrictions, contained in the forty-fourth chapter of the Revised Statutes, relating to corporations, generally, and in that part of the thirty-ninth chapter, and the statutes subsequently passed, which relate to railroads By an act passed on the 19th of March, 1845, (*St.* 1845, *c.* 159,) this corporation and the Boston and Maine Railroad were authorized to unite themselves in one corporation, to be called the Boston and Maine Railroad. The union took place accordingly, and the subsequent proceedings were in the name of the united corporation.

The company thus incorporated having laid out their road, and taken the land necessary therefor, the petitioner in the present case presented her petition to the county commissioners of Middlesex, at a special meeting of the board, on the 14th of November, 1844, for an appraisement of the damages, occasioned by the laying out and construction of the railroad

of the respondents, over and across the flats appurtenant to the wharf estate owned by her. The commissioners, having first viewed the premises and heard the parties, at a meeting held on the first Tuesday of January, 1845, estimated and awarded the damages sustained by the petitioner, to be paid her by the company, at the sum of $800, with costs taxed at the sum of $45·87. The petitioner, being dissatisfied with this estimate, applied to the commissioners, at their next meeting, held by adjournment on the 25th of March, 1845, to have her damages estimated by a jury. The petition for a jury was continued, from time to time, until the 26th of March, 1846, when the prayer thereof was granted, and the clerk was directed forthwith to issue a warrant to the sheriff of the county, to summon a jury according to law, for the purposes mentioned in the petition.

The sheriff proceeded accordingly to summon and empanel a jury, who, on the 18th of July, having viewed the premises and heard the parties, rendered a verdict in favor of the petitioner, for her damages, estimated at the sum of $1451·71. This verdict, being returned to the court of common pleas, at the next September term thereof, was set aside, and the petitioner thereupon appealed to this court.

The objections, taken by the respondents to the proceedings before the commissioners and before the jury, upon which they relied as grounds for sustaining the court of common pleas in setting aside the verdict, will be best understood by a reference to such of the papers and records in the cause, as were brought up to this court upon the appeal.

The first proceeding, in the order of time, of which a record was produced in this court, was the petitioner's application to the county commissioners, to have her damages assessed by a jury, which was as follows: —

" To the Hon. County Commissioners for the County of Middlesex, at their meeting to be held at Cambridge on the twenty-fifth day of March, 1845, by adjournment from the first Tuesday of January, 1845.

"The petition of Lucy J. Walker of Charlestown, in said county, respectfully represents: That at a special meeting of your Honors held at Charles-

1 *

Walker *v.* The Boston & Maine Railroad.

town in said county, on the fourteenth of November last, she presented her petition for an appraisement of damages against the Boston and Maine Extension Railroad Company, occasioned by the laying out and constructing the railroad of said company over and across the flats appurtenant to the wharf estate owned by your petitioner, as set forth in her said petition, when and where your Honors, having viewed the premises, heard the respective parties. And at the meeting of your Honors, held at said Cambridge on the first Tuesday of January, 1845, you did estimate and award the damages sustained by your petitioner, to be paid her by said company, at the sum of eight hundred dollars, with costs taxed at the sum of forty-five dollars eighty-seven cents. That your petitioner is dissatisfied with said estimate, and wishes to have her said damages assessed by a jury. Wherefore she prays your Honors to issue your warrant for a jury to assess her said damages, agreeable to the statute in such cases made and provided."

The proceedings and order of the commissioners, upon this petition, appear by the following memorandum thereon, attested by the clerk : —

"MIDDLESEX, ss. County Commissioners' meeting at Cambridge, January, 1846, and by adjournment at said Cambridge on the twenty-sixth day of March, 1846.

" This petition was presented to the county commissioners at their January meeting last, and thence said petition hath been continued from time to time, to this time. It is now ordered, that the clerk forthwith issue a warrant, directed to the sheriff of said county of Middlesex, to summon a jury according to law in such case made and provided for the purposes in said petition mentioned."

The warrant, issued in pursuance of the foregoing order, under the seal of the commissioners, and attested by the clerk, was as follows : —

"To the Sheriff of our County of Middlesex.
                                               " Greeting.
" Pursuant to the annexed order of the county commissioners, you are hereby required to summon a jury agreeably to the law in such case made and provided, to meet at some convenient time and place, and have them sworn, to consider and estimate the damages done to the petitioner named in said petition, by the laying out and constructing the railroad of said company, over and across the flats, appurtenant to the wharf estate, owned by said petitioner as aforesaid. All which being done within three months from the time of passing said order, you are to make return of this warrant, and of your doings herein under your hands, and also of the verdict of the jury under the hands and seals of the jurors, by whose oath the said damages shall be estimated, to the court of common pleas, which shall be holden in said county, next after said verdict shall be agreed upon, that said court may adjudicate upon said verdict. And you are to notify the petitioner, and all others interested, of the

time and place of your meeting for the purposes aforesaid. Given under the seal of said commissioners, at Cambridge, this fourteenth day of April, in the year of our Lord one thousand eight hundred and forty-six."

The sheriff returned the warrant, under his hand, with the following statement of his proceedings thereon : —

"MIDDLESEX, ss. July 18th, 1846. Pursuant to the annexed warrant, I made application to the mayor and aldermen of the city of Cambridge, and the selectmen of the towns of Charlestown and Somerville, respectively, three nearest towns not interested in the question, requiring them to draw from the jury box, of each of their respective towns, the names of good and lawful men to serve on the jury therein ordered, to wit, from the city of Cambridge four, from the town of Charlestown five, and from the town of Somerville three, and said mayor and aldermen, and said selectmen, made due return of said applications, as follows, to wit : Simon P. Clark, Edward Hyde, William P. Fiske, and Luther L. Parker, were returned from said city of Cambridge ; Samuel Lamson, Joseph W. Whitton, Thomas Dearing, Noah Butts, and Edward Hearsey, were returned from said town of Charlestown ; and Orr N. Town, John Runey, and Charles Adams, were returned from the said town of Somerville, as appears by the certificates of the mayor and aldermen of said city of Cambridge and said towns respectively. And I caused said persons so returned to serve as jurors, to be summoned to come before me on the eighteenth day of July instant, at nine o'clock in the forenoon, at the Neck Hotel, in Charlestown in said county.

And I gave seasonable notice to the parties of the time and place, when and where, I should have said jury. And on the said eighteenth day of July instant, I proceeded to empanel said jurors, all of whom as above named being personally present, they were duly sworn, before me, to make a just and true appraisement of the damages sustained by the complainant in this case, and well and truly to try all such other matters as should lawfully be submitted to them under said complaint, and to give a true verdict therein according to law and the evidence given to them ; and after said jurors had chosen Orr N. Town foreman, by ballot, I conducted them to the premises, which they viewed ; after which, and after they had fully heard the parties, I caused them to be by themselves, when they agreed upon and sealed up their verdict, which is herewith returned into court." *

The jury returned the following verdict, under their hands and seals : —

" MIDDLESEX, ss. June 18th, 1846. Verdict of the jury in the case of Lucy J. Walker, of Charlestown, petitioner, against the Boston and Maine Railroad Company.

" The jury empanelled by Samuel Chandler, sheriff of said county, to estimate and assess the damages sustained by the said Lucy J. Walker, occasioned

---

* The month seems to be mistaken in this return. By the verdict, it appears, that the proceedings before the jury took place on the 18th of June.

by laying out and constructing the railroad of said company over and across her land and flats, as set forth in her petition, having been first duly sworn, by Samuel Chandler, sheriff, and having chosen Orr S. Town foreman, by ballot, after viewing the premises, and fully hearing the evidence and the parties, do find, and our verdict is, that the said Lucy J. Walker recover, against the said Boston and Maine Railroad Company, the sum of fourteen hundred and fifty dollars and seventy-one cents, as her damages sustained as aforesaid. In witness whereof, we have hereunto set our hands and seals, this eighteenth day of June, A. D. 1846."

The record of the court of common pleas, a copy of which was in the case, contained a recapitulation of the proceedings already stated, and concluded as follows: —

"The parties appear, and being fully heard, and mature deliberation, by the court, being had in the premises, the court set aside the verdict aforesaid. From which order and decision of the court the said Lucy J. Walker appeals to the next supreme judicial court to be holden for this county.

The respondents objected, upon the foregoing proceedings: —

1. That they had no notice of the pendency of the petitioner's application for a jury.

2. That the petition for a jury was presented to the commissioners, at their meeting in April, 1845, and the warrant was ordered to be issued thereon in March, 1846; whereas, by the statute, the petition should have been presented and acted upon, at the same or the next succeeding meeting of the commissioners.

3. That it did not appear, when the matter of this petition was finally determined upon, that there were three disinterested commissioners present, or that the parties consented to the proceeding.

4. That some of the jurors were drawn from the town of Charlestown, in which the land taken by the respondents was situated, and which, therefore, was not an adjoining town.

5. That the jury were not directed to estimate the proprietary interest of the commonwealth in the flats, and to deduct it from the whole value of the land.

6. That there were other cases of the same kind, which ought to have been put to the same jury.

The respondents also objected : —

7. That the direction of the sheriff, as to the mode of ascertaining the petitioner's interest in the flats, was erroneous.

The ground of this last objection appeared by the following certificate of the sheriff, as amended by the agreement of the parties : —

" It was proved, that the channel runs from Davidson's mill, so called, in the direction indicated upon the plan drawn by Charles Whitney, February 10th, 1846, passing the Boston and Maine Railroad and the Fitchburg Railroad, to the draw in Prison Point bridge, and that a channel also exists in front of the state prison, as marked on the plan, from which the water does not recede at the lowest tides, between a point about opposite the north-west passage, or canal, into the prison grounds.

" The petitioner proved her title to the lot on the upland marked ' A B ' on the said plan, and the flats appurtenant, and called Stephen P. Fuller, surveyor, who testified to the correctness of the line of high water mark, as shown on the plan, and that the lines from ' A B ' to ' C D ' were obtained by drawing a straight line across the mouth of the indentation, and giving to each abutter a width of flats upon said line, in proportion to the extent of his line upon high water mark, as drawn upon said plan, and by the extension of those said lines, at right angles with said line drawn across as aforesaid towards low water mark, one hundred rods, or to the channel, which results in giving the lot of each proprietor a portion of the flats of equal width throughout.

" It was agreed, that the plan, which was before the jury, of the channel of Miller's River, towards which the said lines are directed, and of the flats, and shore of the bay, between said river and Somerville and Charlestown, is correct, and to be considered a part of the record.

" At the request of the petitioner, I directed the jury, that, by law, the flats of the petitioner were ascertained by drawing straight lines from the opposite corners of her upland

'A B' towards low water mark, one hundred rods, to points marked on said plan, 'C D.' To this ruling, the respondents excepted, and at their request I hereby certify the same." *

*S. Bartlett* and *J. Dana,* for the petitioner.

*R. Choate* and *T. Farrar,* for the respondents.

The opinion of the court was delivered on the 26th of March, 1849.

SHAW, C. J.† This case comes before the court, by an appeal on the part of the petitioner from an adjudication of the court of common pleas, by which that court set aside and rejected the verdict of a sheriff's jury, awarding damages to the petitioner, for lands alleged to belong to her and to have been taken by the respondents in laying out their railroad. The petitioner now asks that this verdict, returned by the jury in her favor, may be accepted, and that judgment may be rendered thereon. To this the respondents object, and insist on various grounds of exception, both to the petitioner's title, the instructions of the sheriff, and to the correctness and regularity of the proceedings. The record before us does not show upon what grounds the court of common pleas proceeded in disallowing this verdict; but if any of the exceptions and grounds of defence, taken by the respondents, are well founded, and it thus appears that the petitioner cannot recover, then the judgment is to be affirmed, and all further proceedings in the case terminated. We shall therefore proceed to consider these exceptions and grounds of defence, as they appear upon the record, and have been brought to our attention in the argument.

The first and material question, which lies at the foundation of this inquiry, is this; what questions are open, upon an appeal like the present, from an adjudication of the court of common pleas, ordering the acceptance or rejection of the verdict of a sheriff's jury, returned into that court, pursuant

---

* The localities, referred to in this and the three following cases, are delineated on the accompanying map.

† WILDE, J., and FLETCHER, J., did not sit in this cause.

Walker *v.* The Boston & Maine Railroad.

to statute   The whole course and form of proceeding are comparatively new, and no very definite practice in relation thereto has yet been established.

It has been decided, that an appeal lies, in a case like the present, by force of the Rev. Sts. *c.* 82, $ 6, giving such appeal, in any civil suit or proceeding whatever, from a judgment or decision founded on matter of law apparent on the record. *Lanesborough* v. *Berkshire,* 22 Pick. 278.   But it is considered, that such an appeal must be strictly confined to the purpose for which it is allowed, namely, in order to afford a cheap, simple and prompt mode of reëxamining a judgment in matter of law, which would be examinable and liable to be reversed or affirmed on writ of error.   *Ward* v. *American Bank,* 7 Met. 486.

This rule is not confined to a writ of error in the strict technical sense in which that term is used; because such a writ of error lies only in cases of judgments rendered according to the course of the common law.   But the appeal being given in matters of law, apparent on the face of the record, .n every civil suit and proceeding, it must extend to judicial proceedings not according to the course of the common law, and where *certiorari* would be the proper mode of bringing the proceeding before this court, for reëxamination, in matter of law.   Such was the case of *Lanesborough* v. *Berkshire,* first above cited.

But as such an appeal is, in effect, a summary proceeding, given as a substitute for a writ of error, it will be construed with the same liberality, to reach the merits and justice of the case, as that with which a writ of error is directed by the statute to be construed.   The Rev. Sts. *c.* 100, $ 23, provide, that after judgment any defect or imperfection may be rectified or amended, either by the court in which it is rendered, or by the court to which it shall be removed, if substantial justice requires it.   And the next section provides, that no judgment shall be reversed for any defect or imperfection in matter of form, which might by law have been amended.

The obvious purpose of these provisions is, to prevent the

reversal of judgments upon technical exceptions and matters of form, when such reversal is not necessary, to reach the substantial justice of the case. The case of a *certiorari*, if not within the terms, is certainly within the spirit and equity of the statute, and clearly within the reason of the rule. And so it has been settled in a series of cases, that a *certiorari*, which is an application addressed to the sound discretion of the court, will not be granted, when substantial justice has been done; *Rutland* v. *Worcester*, 20 Pick. 71; or where a road has been located and made, and much expense incurred; *Ex parte Miller*, 4 Mass. 565; *Whateley* v. *Franklin*, 1 Met. 336; or on account of the shortness of notice to a town, where the town has appeared and made no objection to the ..ortness of the notice; *Comm'th* v. *Westborough*, 3 Mass. 406; or where it does not appear on the records of the proceedings, that a party has had notice, if it appear *aliunde* that the parties substantively interested appeared, or much time has elapsed. *Hancock* v. *Boston*, 1 Met. 122. And the court are of opinion, that upon an appeal, by which a case is brought before this court, to be reconsidered upon questions of law, and where the court are to reëxamine it in a summary way, as would be done more formally on *certiorari*, the court are to consider the case in the same manner as if thus formally brought before them.

But in getting an adjudication reversed and annulled by *certiorari*, the party moving has two processes to go through. As the issuing of a writ of *certiorari* is not a matter of right, the party must first apply to the court by petition, and set forth the grounds and merits of his case; upon which, notice to show cause is given to the adverse party, and on the hearing of the petition, the question is discussed upon its merits, and the petition is granted or denied according to the substantial justice of the case. If denied, the adjudication will stand unreversed, although there may be grounds of legal exception. It is granted only when, upon grounds of justice and law, the judgment is irregular and erroneous, and in the opinion of the court ought to be annulled. Now when the

popular and more summary process of appeal is substituted for the more formal and cumbrous one of *certiorari*, this court as the revising tribunal, are called upon to exercise both branches of this jurisdiction, as well that which is exercised upon the petition for a *certiorari*, as that which is exercised in reversing or affirming the judgment upon the return of that writ. With these preliminary views of the nature and scope of the inquiry before us, we will proceed to examine the alleged grounds of error apparent on this record.

1. The first exception is, that the respondents had no notice of the pendency of the petitioner's application for a jury, previously to the issuing of a warrant therefor by the commissioners.

There is no doubt, that in point of law, the corporation, against whom a warrant for a jury is prayed for, is entitled to notice from the county commissioners, in order that they may have an opportunity to adjust the damages by negotiation, or to agree upon a committee to assess them. *Central Turnpike, Petitioners,* 7 Pick. 13. That case was decided on a petition for a *certiorari*. But the question still recurs, how must the objection be made to appear, and how shall the party excepting take advantage of it? That he may petition for a *certiorari* to remove the adjudication, under which the warrant issued, as soon as he has notice of the fact, is one remedy; but it is insisted, that it is not an adequate one, and that it has not been allowed in this stage. *Hinckley, Petitioner,* 15 Pick. 447. In that case, the objection was sustained on an appeal, affirming an adjudication of the court of common pleas to the same effect. But in that case, it is stated, that the verdict was rejected by the court of common pleas, on the ground, that no notice was given by the commissioners, without stating how the fact appeared; it might have been by an agreed statement, or in the judgment itself, and, further, no exception was taken to its consideration.

In the more recent case of *Brown* v. *Lowell,* 8 Met. 172, before this court, on appeal from the court of common pleas, affirming their judgment setting aside the verdict of a sheriff's

jury, although there was another reason for setting aside the verdict, yet it was also held to be erroneous, on the ground, that the commissioners had given no notice of the pendency of a petition for a jury. No objection, however, was taken, that the point was not open upon the appeal; but, on the contrary, both parties desired the opinion of the court upon it.

But without questioning the authority of these cases, and without denying that the objection may have been rightly taken before the court of common pleas, and in due form brought before this court, we think it nowhere appears on this record, that the respondents had not due notice of the pendency of the petition before the warrant issued.

In order to understand what questions, this proceeding before the court of common pleas, and by appeal before this, presents, it becomes necessary to examine somewhat in detail, the nature of these proceedings, and the form and matter of the record to be examined. We have already said, that this course of proceeding is anomalous, and that it differs from the ancient course of proceeding, when these matters were under the jurisdiction of the court of sessions, possessing all the attributes, and proceeding with all the forms, of a strictly judicial tribunal.

But the functions of the county commissioners are rather administrative than judicial, and up to a certain point, they act rather as public agents and arbitrators, than as judges Still, the legislature probably thought it necessary, in compliance with the injunctions of the constitution, to give to those, whose property was taken for public use, the privilege of a trial by jury.

Up to this point, the subject is left under the administration of the commissioners; but, after the issuing of a warrant, and the matter being thus put in train for the trial by jury, it seemed necessary that provision should be made for the examination and allowance or disallowance of the verdict; and as that might involve great questions of public and private right, it was probably considered more conformable to the analogies of the law, and the general principles on

Walker v. The Boston & Maine Railroad.

which justice is administered, to commit this function to a strictly judicial tribunal. It is therefore provided, that the verdict may be returned to the court of common pleas, who shall receive the same, and adjudicate thereon, and may set the same aside, for good cause. Rev. Sts. c. 24, § 34, reënacting, in this respect, *St.* 1827, c. 77, § 12.

From this view, it is manifest, that the time and mode in which the matter is first brought under the cognizance of the court of common pleas, is the time when the verdict is first returned there by the sheriff. Their record will then, after the usual caption, set forth the warrant, the return of the sheriff, and the verdict of the jury. And these, as far as we can perceive, are all that is before them as matter of record; all the anterior proceedings having been conducted before the county commissioners.

We are not aware, that there is any particular form, in which a warrant from the commissioners is framed, and it is probable, that different commissioners and clerks adopt different forms. Whatever may be the form, we think it should set forth, with sufficient certainty, the subject matter into which the jury, under the direction of the presiding officer, are to inquire. It should describe the land over which the road passes, the petitioner's title to, and interest in it, the location of the road, and the incidental damages, if any, which the petitioner has sustained, in addition to the value of the land taken. This, we think, may be done, by reciting the substance of the petition in the warrant, or by annexing an authenticated copy of it, and referring to such copy in the warrant, by which it is effectually incorporated into, and made part of, the warrant. But such an annexation of a copy of the petition, with the orders of the commissioners, does not necessarily bring before the court of common pleas the regularity of the anterior proceedings, as a matter of record; they are inserted *alio intuitu*, for the purpose of informing the sheriff and jury of the matter to be tried.

Then the question recurs, Have the court of common pleas no power to decide, in acting on the question of the accept-

ance of the verdict, that the warrant itself issued improvidently, or without legal authority ? This certainly does not follow from the views we have taken. The powers given to the court of common pleas, on the return of the verdict, are very large and indefinite ; they are to adjudicate thereon, and may set the same aside for good cause. There is nothing to specify the nature of these causes. The empanelling of the jury by the sheriff, and all his other proceedings, will appear by his return, together with his rulings and decisions, which the law requires him to return ; and all these are of course before the court for their consideration. There is no doubt, also, that whatever affects the purity, honesty and impartiality of the verdict, such as tampering with jurors, or other misconduct of a party, any irregularity or misconduct of juries, showing a good cause why the verdict should not be accepted, may be brought before the court by evidence *aliunde*, because such a cause vitiates the verdict, proves that it is not conformable to law and justice, and ought not to stand as the basis of a judgment.

Whether it would be competent for the court to set aside the verdict, as being without or against evidence, or against the weight of evidence, we believe, has not been decided, and we give no opinion. The language seems broad enough to include any and all causes, for which a court of law, in the exercise of its ordinary jurisdiction, may set aside the verdict of a jury, and order a new trial. Whether and to what extent, the generality of the language should be restrained by the subject matter, and the implications arising from the objects and purposes of the statute, are questions to be considered as they arise.

But the power of the court of common pleas over such a verdict is much larger than the power of this court on an appeal. The court of common pleas may set aside the verdict for any good cause ; we are merely to reëxamine their judgment, in order to ascertain if there is any error therein apparent on the record. If, then, a party desires to bring his case before this court, upon questions of law, not appearing

in the warrant, the verdict, the return of the officer, including his directions and instructions to the jury, and the adjudication of the court of common pleas, it can only be done by a bill of exceptions filed and allowed in that court. We see not why that court may not specify in the adjudication the grounds, on which they accept or disallow the verdict; and if such adjudication involve a question of law, it would then be apparent on the record. Otherwise, as already stated it may be done by bill of exceptions. The language of the statute is very broad : " Any party, aggrieved by any opinion, direction or judgment of the court of common pleas, in matter of law, in any civil action, suit or proceeding whatever, whether it be according to the course of the common law or otherwise, may allege exceptions," &c. Rev. Sts. *c.* 82, § 12. Exceptions thus allowed and filed would become a part of the record, and come with it to this court. The questions presented in the case are then apparent on the record, and examinable by this court on appeal.

Now, therefore, suppose that the cases cited, *Hinckley, Petitioner,* 15 Pick. 447, and *Brown* v. *Lowell,* 8 Met. 172, do fully warrant the proposition for which they were cited, to wit, that in adjudicating upon the verdict of a sheriff's jury, it is a good cause for setting it aside, that the respondents had no notice from the commissioners, before the warrant issued, that principle cannot affect the present case. If the court of common pleas were called upon to act on this ground, it would not be from any thing appearing in the warrant or return, but from facts brought to their notice by evidence *aliunde.* The fact, that no averment appears on the record, that notice was given, could be of no avail, because there is no occasion why it should appear. Even if the record of the commissioners were produced, as such evidence of the fact, it would not be conclusive ; because it might be shown, in answer to such objection, that in point of fact, the respondents were summoned, or consented to take notice, without summons, or in fact appeared before the commissioners. All this is matter of fact before the court of common pleas, open

2 *

to proof, by the commissioners' records, by testimony, and
other competent evidence ; and the conclusions of the court
of common pleas, upon all questions of fact, are decisive and
final.    Were it otherwise, an appeal to this court would bring
before us all questions of fact, as well as of law, contrary to
the plain intent of the statute.    If there was no formal notice
ordered or given, and no waiver, appearance in fact without
notice, or other good excuse, as in the case of *Hancock* v.
*Boston*, it was a pure question of fact.    If, upon any facts
admitted or proved, the court of common pleas decided, that
decision could be corrected here only when apparent on the
record, and could only appear on the record, by a bill of ex-
ceptions taken there.    We are therefore of opinion, that this
first objection to the petitioner's verdict cannot prevail.

2.  The next objection is, that the application for a jury
was presented to the commissioners at their term held in
April, 1845, and the warrant was issued at March term, 1846,
whereas the respondents maintain, that the petition must be
received and acted upon at the same or next succeeding meet-
ing of the commissioners, and not afterwards.    Rev. Sts. *c.*
24, § 14.    The answer already given applies to this, that it
does not appear on the record.

But the objection seems to call for some further remark ;
and it is obvious to us, that this provision limits the time,
within which the application must be made, and not that,
within which it must be decided upon.    It would require
express language to warrant a contrary conclusion, because
much time may often necessarily elapse, for giving notices,
hearing proofs, and for deliberation.    But, further, the clause
in question, " may be received, and acted upon," is found in
the chapter relating to highways (Rev. Sts. *c.* 24,) and is not
found in the chapter relating to railroads (Rev. Sts. *c.* 39).
The latter merely provides, that either party dissatisfied, &c.,
may apply for a jury, at the same, or the next regular meet-
ing, (extended to one year by the statute of 1847, *c.* 181,)
omitting the words, " may be received and acted upon," upon
which alone this objection arises, but proceeds to direct that

the like proceedings shall be had thereon, as in the case of highways.

But as the preliminary proceedings, in regard to laying out, assessing damages, and making returns, are different in the two cases, the rules directing the mode of proceeding in the one can only be followed in the other, so far as the same are applicable. In the case of highways, the commissioners assess damages, as of course, to all proprietors, whose lands are taken, and return the assessment, with their location, and thus fix the time, within which application may be made for a jury. In the case of railroads, damages are assessed only on application to the commissioners, by one of the parties, within three years after the land is taken.

3. It is objected, that wherever there are opposing parties, no business can be finally determined by the commissioners, except by consent, unless there shall be three disinterested commissioners present. Rev. Sts. *c.* 14, § 27. It is a sufficient answer to this objection, that it does not appear, that there were not three disinterested commissioners present, or that the business was not done by consent. The presump tion, comformably to the maxim *omnia rite acta*, is, that the proceedings were correct and conformable to law, unless the contrary is shown. Errors must be apparent, and not merely suggested.

4. The next objection, arising from the facts apparent upon the record, that is, from the return of the sheriff, is, that the law was not complied with, because some of the jurors were drawn from Charlestown, a town in which the land to be appraised lies. This would be a good exception, if seasonably taken before the sheriff and not waived. It has been held, under this provision, that the town in which the land lies is not a town next adjoining, within the provision of the statute. *Wyman* v. *Lexington & W. Camb. R. Corp.* 13 Met. 316.

But this was an exception to the Charlestown jurors only, the other jurors were rightly drawn and summoned, and the exception should have been made at the time ; and the respondents, by proceeding without exception, and taking their

chance for a favorable verdict, are precluded from afterwards taking the exception. The fact must have been known to the respondents. It has been repeatedly held, that if there be an exception to a juror, and the party, knowing of such exception, proceeds to trial, it is inconsistent with good faith and fair dealing, for him afterwards to insist on such an objection. If he has any real objections to any juror, he must take his exceptions in due time and right order. *Davis* v. *Allen*, 11 Pick. 466 ; *Simonds* v. *Parker*, 1 Met. 508. And the same rule applies to referees and county commissioners. *Fox* v. *Hazleton*, 10 Pick. 275 ; *Ipswich* v. *Essex*, 10 Pick. 519. In the case cited of *Wyman* v. *Lexington & W. Camb. Railroad Corp.*, the exception was taken before the sheriff, and insisted on, seasonably.

If the exception had been made at the time, it would have been competent for the sheriff to set aside the jurors who were thus disqualified, and to fill their places with others to whom there could be no exception. The court are of opinion, that by proceeding to trial without exception, this objection to the summoning and empanelling of the jury was waived, and now constitutes no good ground of objection to the verdict.

5. Another exception taken is, that the jury were not directed to value the proprietary interest of the commonwealth, and deduct it from the aggregate. This is founded on the Rev. Sts. *c.* 24, §§ 48, 49, 50, which provide for the case where several parties have different estates or interests, at the same time, in any land or buildings, and direct that the jury shall first determine the damage done to the whole, as an entire estate, in fee simple, and then apportion the amount amongst the several parties, having several and distinct interests therein.

This is a very wise and useful provision, and should be carried into effect, according to its true intent and spirit. It is one intended for the relief and benefit of those who are liable to pay damages. But we consider it, to say the least, very doubtful, whether the exception can be taken in this

stage of the proceedings, if it was not taken at or before the trial. It was not for the sheriff, or for the jury, without any direction in the warrant, without notice from the respondents, that any body but the petitioner had an interest in the land to be appraised, to assume the existence of such an interest, and act upon the assumption.

But it is a more satisfactory answer, that we cannot perceive, that the commonwealth had any such interest in these flats. It is doubtful, on the terms of the statute, whether it extends to persons, having a mere easement, for light, air or way, or other easements of the like kind. The statute speaks of parties having several estates or interests, and obviously, as its primary object, looks to the case of estates for life or years, carved out of the fee, as in the case of *Ellis* v. *Welch*, 6 Mass. 246. It may extend perhaps to such easements as constitute a service and burden upon the estate, and thus constitute a part of its aggregate value, to be distributed ; and it may possibly extend to other easements, of which we give no opinion. But, upon the grounds suggested, the commonwealth had no easement in these flats. The colony ordinance gives to the riparian owner, " propriety " to low water mark. This has been construed to be property, ownership, a full title in fee to the soil. The provision, that the owner shall not by this liberty prevent access to other men's houses, is a reservation in favor of adjacent proprietors, the owners of such houses and lands, and reserves no easement for the commonwealth.

6. One other exception of the like description remains to be considered, which is, that there was one or more other cases of the same kind, and that they all ought to have gone to the same jury. We are not aware, from any thing apparent upon the record, that any other case of the same kind was pending before the commissioners, at the same time, or if there was, that it did not go to the same jury. It has been decided, that they need not be included in one and the same warrant. *Richardson* v. *Curtis*, 2 Cush. 341.

7. The next and by far the most important question, in

this case, turns upon the title of the petitioner, and the directions of the sheriff, in regard to the division of the flats adjoining the petitioner's wharf. The whole of the soil, for the taking of which the petitioner claimed damages, consisted of flats lying between high and low water mark. Her title to land bordering on a cove, in which the sea ebbed and flowed, was proved or admitted; and there was no proof or suggestion, that by any conveyance, the flats, or the upland, had been alienated, disconnected from each other; so that the inquiry as to the petitioner's title involved the difficult question, in what direction the flats of the petitioner were to run, and by what lines they were to be measured and limited. No general rule of division has been laid down, and perhaps, from the nature of the case, none can be laid down. Many coves, inlets, and estuaries of rivers, are so irregular and various in outline, and so traversed by crooked and meandering creeks and channels, from which the sea does not ebb, that it is utterly impossible to apply to them any of the rules which have been applied to other cases. Such, to a considerable degree, is the character of the cove in question, though far from being as irregular as many others. The most we can hope to do is, to take the colony ordinance of 1641, and to apply it according to its true spirit; and, by as near an approximation as practicable, to the rules which have been judicially established, to lay down such a line of division, as to give to each riparian proprietor his fair and equal share.

We are of opinion, that the rule of division, prescribed by the sheriff, was not the correct one. It appears, by the case, that the stream running from the tide mills, along through the westerly part of these flats, is a natural channel or creek, from out of which the tide does not ebb. It must therefore be a *terminus* to a claim of flats in that direction. *Sparhawk v. Bullard*, 1 Met. 95. The lines directed to be drawn by the sheriff appear to have been drawn from the side lines of the petitioner's upland, parallel to each other, towards the channel of Miller's River, without regard to this creek, running from the tide mills. But we think, that this creek not

only must form a limit to the claim of flats, but must tend to give the direction in which they run. On the estuary of a river, or arm of the sea, through which there is a channel, the lines of flats will ordinarily run towards such channel, and in the most direct course. *Ashby* v. *Eastern Railroad Co.*, 5 Met. 368.

There is also a creek on the easterly side, extending up from Miller's River, along in front of the state prison, to a point opposite the western entrance into the state prison, from which the tide does not ebb, which tends to give a character to this cove.

There is also a spur or narrow tract of flats, extending up in a north-easterly direction, between the state prison lands, and the Charlestown burying ground, from which the tide does ebb, but which hardly seems to be a part of the cove, but a strip of flats, detached from it. Considering the peculiar formation of this tract of flats, the court are of opinion, that a line extending up from the upper end of the creek, or what some of the witnesses call the rudiments of a creek, in front of the state prison, nearly in a continued direction, in its present course, to the upland, should form the easterly *terminus* of the shore line of the cove. This line will strike the upland or high water line, near the north-westerly corner of the burying ground, as laid down on the map. Thence follow the shore line, or line of high water mark, northerly and westerly, to the tide mill dam, and this is to form the upland or shore line of the cove. To form the outer or low water line, draw a line across the narrowed space between the two creeks, as the mouth of the cove. If the low water line is shorter than the high water line, take the whole length of the upland, and ascertain each owner's proportion, and give him the same proportion on the low water line, and in the same order, and then let lines be drawn from each proprietor's lines, at high water, to his corresponding points in the low water line, and this will define the limits of the flats of each owner.

It was urged in the argument for the petitioner, that the

direction of each riparian proprietor's flats was not to be governed by the nearest creek or channel from which the sea does not ebb, if not adapted to navigation ; but rather to the nearest broad, open, navigable channel to the sea.  This argument was founded upon the suggestions made in many of the cases, that the colony ordinance was intended to promote the erection of wharves, and to facilitate navigation.  No purpose of this sort is expressed in the ordinance itself ; but is rather a comment upon its general policy ; and we think it is too loose and uncertain, to form the basis of a practical rule for a division of this species of property among conterminous proprietors.  The views of such proprietors and of those who might be called upon to declare and determine their rights, would probably differ essentially, as to what the conveniences of navigation, from particular ports to the open sea, would require.  The purpose of the ordinance rather seems to have been, to declare the right of private owners in the soil of the flats, between high water and low water, leaving the owners, with their rights thus ascertained, to use or appropriate their property, or sell and dispose of it, in any way which they might deem most beneficial.

But, then, if the directions of the lines of the proprietors of uplands are to be governed by the nearest creek or channel, from which the tide does not ebb, and not by the nearest broad, navigable channel to the sea, it may be asked, why we have not run these lines more directly to the channel from the mills, and not to the narrowest space between the two creeks ; the answer is, that the creek from the mills is not straight. After running some distance, in a direction nearly southerly, it makes a bend easterly, below the respondents railroad, almost at right angles with its previous course, so that in effect the lines we adopt are lines running towards that creek. We have therefore thought it most consonant with the principles of division of flats heretofore adopted, to consider the narrowest space between the two creeks as the mouth of the cove to be divided.

If it be urged, that by taking the shortest line between the

two creeks, as the mouth of the cove, the flats spread out much broader below, before the lines of the proprietors within the cove extend outward one hundred rods; and if the lines of these proprietors are narrowed in the manner proposed, they would not get their share outside; we may answer, though it is perhaps not material to the present case, that we see no reason, why, upon the same principle of giving an equal division, these same proprietors should not widen and spread in proportion, below the mouth of the cove, to low water mark, or one hundred rods. We say it will not affect the present case, because, from an inspection of the map, we suppose that at the place where the railroad crosses the flats, the line is as short as at any place between the two creeks.

This mode of ascertaining the extent of the petitioner's flats may be liable to objections; we know no mode of dividing these flats, which would be free from objection. Believing that the sheriff adopted a different rule, and gave a different direction upon this point, the court are of opinion, that for this cause, the judgment of the court of common pleas, setting aside the verdict, must be affirmed, and the case remanded to the county commissioners, with directions to issue a new warrant.